UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DEANNA TABISH-WEAVER,

          Plaintiff,

   vs.

UNITED PARCEL SERVICE,

          Defendant.

NO.  CV-07-0167-EFS

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

    Before the Court, without oral argument, is Defendant United Parcel Service's (UPS) Motion for Summary Judgment.  (Ct. Rec. 12.)  Plaintiff Deanna Tabish-Weaver opposes the motion.[1]  After reviewing the submitted material and applicable authority, the Court is fully informed and for the reasons set forth below grants UPS's motion.

///

///

///

---

    [1]  Plaintiff's response was devoid of any legal authority and merely contained Plaintiff's statement of the facts and a brief argument.

ORDER - 1

**A.    Background**[2]

Deanna Tabish-Weaver began working part time at UPS in 1979 at the Spokane, Washington facility. Ms. Tabish-Weaver became a full-time UPS package-car driver in 1986.  At all times during her employment with UPS, Ms. Tabish-Weaver was represented by a union, the International Brotherhood of Teamsters Local 690, and her employment was subject to a collective bargaining agreement.[3]

In 1994, Ms. Tabish-Weaver took an approximately three-year leave of absence to serve as a union business agent.   The union terminated Ms. Tabish-Weaver's employment in 1997, but, for medical reasons, she did not return to work at UPS until 1998.

In 1998, Ms. Tabish-Weaver was released to return to work part time, and UPS accommodated her by identifying a part-time position that she was medically and otherwise qualified to fill.   In 1999, Ms. Tabish-Weaver's doctor released her to return to work full time (but not

---

[2]   In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted declarations, exhibits, and depositions, in the light most favorable to Plaintiff, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).   The following factual recitation was created utilizing this standard, along with the parties' Joint Statement of Uncontroverted Facts (Ct. Rec. 29).

[3]   Ms. Tabish-Weaver filed union grievances and made worker's compensation claims before 1998 and 1999; she experienced no problems or difficulties with UPS's prior accommodations.

ORDER - 2

as a driver), and UPS accommodated her by identifying a full-time position that she was medically and otherwise qualified to fill.    In February 2001, Ms. Tabish-Weaver began a leave of absence due to a workplace injury - she had three surgeries related to his injury over the next year and a half.

In 2002, without being cleared to return to work, Ms. Tabish-Weaver made her first request for accommodation to UPS relating to her 2001 injury.    In response, UPS sought medical information regarding Ms. Tabish-Weaver's condition and ability to return to work.    Ms. Tabish-Weaver initially did not provide UPS with the information it requested, and UPS followed up with her to obtain the information. Ms. Tabish-Weaver's health care provider subsequently provided UPS with incomplete information, and UPS once again followed up to obtain the information it had requested.

Ms. Tabish-Weaver was released to return to work in April 2003. Ms. Tabish-Weaver's doctor's report stated that she could lift up to 50 pounds and perform various physical activities either frequently or continuously.    Ms. Tabish-Weaver confirmed in her deposition that she could lift 50 pounds as of April 10, 2003. Her doctor's report also stated that Ms. Tabish-Weaver could only do sorting work on a twilight shift since this shift generally involved sorting lighter packages.

Ms. Tabish-Weaver's medical restrictions precluded her from doing most jobs at UPS's Spokane facility, but UPS's Workforce Planning Manager, Alton Edwards, met with Ms. Tabish-Weaver on June 12, 2003, to determine what jobs she could possibly perform, and began looking for suitable openings. On August 27, 2003, Mr. Edwards identified two vacant

ORDER - 3

part-time positions, a day-shift Revenue Auditor position and a twilight Small Sorts Sorter position, as potential candidates for combination into a full-time "combination" job.[4]

Ms. Tabish-Weaver testified in her deposition that she was looking for full-time work, that she had the "right" to go back to work full time, and that she was only willing to go back to work part time if she remained classified as a full-time employee with full-time benefits.

UPS package-sorting operations run on four shifts:  preload, day, twilight, and night. In 2003, UPS's day shift typically started between 8:30 and 9:00 a.m., and finished around 1:30 or 2:00 p.m. In 2003, UPS's twilight shift typically started around 5:00 p.m. and ended around 10:00 p.m.  Therefore, the available day-shift Revenue Auditor and twilight Small Sorts Sorter positions could only be combined into a full-time position if there was a break in the middle of the workday - a so-called "split shift." Mr. Edwards combined the two part-time positions into a split-shift combination position and offered the job to Ms. Tabish-Weaver.  In a letter, Ms. Tabish-Weaver accepted this combination job, but noted that she was not giving up any rights that she might have under the collective bargining agreement.

Ms. Tabish-Weaver returned to work on September 19, 2003. Immediately after the day shift, Ms. Tabish-Weaver reported for the

_____

[4]    The collective bargaining agreement provides for the combination of two part-time jobs into a full-time job; these jobs are called "Article 22.3" or "combination" jobs.  The collective bargaining agreement also provides that union-represented positions at UPS are to be filled on the basis of seniority.

ORDER - 4

Small Sorts Sorter job; however, she was advised there was no work to do because there was a three-hour gap between the end of her day shift and th start of the twilight shift.  Instead of waiting for the twilight shift to begin, she went home and did not return for the twilight shift. The next two days proceeded similarly.  Unhappy with that she was not allowed to perform the Small Sorts Sorter job immediately following the end of the day shift, Ms. Tabish-Weaver asked to speak with Mr. Edwards and also contacted her union business agent because she believed that the collective bargaining agreement entitled her to work full time without a split shift.

On September 23, 2003, Ms. Tabish-Weaver's union business agent, Terry Moser, called Mr. Edwards and told him that either UPS would have to provide Ms. Tabish-Weaver with eight continuous hours of work or the company would face a grievance for a contractual pay claim for every day that she worked a split shift.  UPS withdrew the accommodation offer on September 24, 2003, and placed Ms. Tabish-Weaver back on state industrial.

Ms. Tabish-Weaver testified at her deposition that she would have agreed to continue to work the split shift on a temporary basis while she grieved whether split shifts were proper under the collective bargaining agreement.  On November 13, 2003, UPS offered to place Ms. Tabish-Weaver in a part-time position.  Ms. Tabish-Weaver responded to UPS's offer by letter dated November 14, 2003, but did not return a signed accommodation agreement to UPS within the time specified in UPS's offer.  UPS subsequently withdrew its offer.

In February 2004, the Washington State Department of Labor and

ORDER - 5

Industries determined Ms. Tabish-Weaver was totally disabled.

**B.   Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts.  In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When opposing

ORDER - 6

parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could believe it,
a court should not adopt that version of the facts for purposes of
ruling on a motion for summary judgment.").

**C.    Authority and Analysis**

    1.    <u>Failure to Accommodate Claims</u>

    The American with Disabilities Act provides, in relevant part:

> [n]o covered entity shall discriminate against a qualified
> individual with a disability because of the disability of such
> individual in regard to job application procedures, the
> hiring, advancement, or discharge of employees, employee
> compensation, job training, and other terms, conditions, and
> privileges of employment.

42 U.S.C. § 12112(a). In order to establish a failure to accommodate
claim under the ADA, the plaintiff must establish that (1) she is an
individual with a disability, (2) that the employer knew of the
disability, and (3) that she is otherwise qualified to perform the
essential functions of the job sought with or without reasonable
accommodation. *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir.
2001); 42 U.S.C. § 12111. The plaintiff bears the initial burden of
proposing an accommodation that is reasonable and allows her to perform
the job's essential functions. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d
444, 457 (6th Cir. 2004); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249,
1255-56 (11th Cir. 2001). A reasonable accommodation includes:

> (A) making existing facilities used by employees readily
> accessible to an usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules,
> reassignment to a vacant position, acquisition or modification
> of equipment or devices, appropriate adjustment or
> modifications of examinations, training materials or policies,
> the provision of qualified readers or interpreters, and other
> similar accommodations individuals with disabilities.

ORDER - 7

42 U.S.C. § 12111(9). However, an employer is not required to displace other employees in order to accommodate a disabled employee nor create a new position. *Hedrick*, 355 F.3d at 457; *Cassidy v. Detroit Edison Co.*, 138 F.3d 629 (6th Cir. 1998).

Even assuming Ms. Tabish-Weaver is an individual with a disability, the Court concludes she did not present sufficient evidence establishing a genuine issue of material fact as to whether UPS failed to reasonably accommodate her disability. There is no dispute that Ms. Tabish-Weaver could no longer serve as a package car driver and that UPS accommodated her physical limitations from 1998-2001. In 2002, however, when Ms. Tabish-Weaver was released to work full time by her doctor, UPS concluded that she did not qualify for any available full-time positions. Ms. Tabish-Weaver does not dispute this; rather, she argues that UPS's combination split-shift position was an unreasonable accommodation. The Court disagrees.

First, there is no evidence to support Ms. Tabish-Weaver's assertion that the collection bargaining agreement entitled her to work a "continuous" combination job under these circumstances. Second, UPS was not required under the ADA to allow Ms. Tabish-Weaver to work these two part-time positions continuously because the essential functions[5] of the positions were connected to their respective shifts. Although job restructuring is a possible accommodation under the ADA, UPS was not required to reallocate the essential functions of these positions to

---

[5] Essential functions are "the fundamental job duties of the employment position [the disabled employee] holds or desires." 29 C.F.R. § 1630.2(n)(1).

ORDER - 8

accommodate Ms. Tabish-Weaver's continuous split-shift request. *See Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005); *Benson v. N.W. Airlines*, 62 F.3d 1108, 1112-14 (8th Cir. 1995). This is because an accommodation is reasonable only if it enables the employee to perform the essential functions of the job. *Lucas*, 257 F.3d at 1259-60; *Smith v. Blue Cross Blue Shield of Kan.*, 102 F.3d 1075, 1076 (10th Cir. 1996). Ms. Tabish-Weaver failed to present evidence to rebut UPS's assertion that the essential functions of these two part-time jobs were dependent upon their respective shifts. For these reasons, the Court concludes Ms. Tabish-Weaver failed to establish a triable issue of fact as to whether a reasonable accommodation was available. UPS's motion for entry of judgment in its favor on the failure to accommodate claim is granted.

     2.   <u>Disparate Treatment and Retaliation Claims</u>

     In her response, Ms. Tabish-Weaver did not set forth any argument to oppose UPS's motion to dismiss her disparate treatment and retaliation claims. Accordingly, the Court grants UPS's motion.

**D.  Conclusion**

     Because Ms. Tabish-Weaver does not oppose dismissal of her disparate treatment and retaliation claims and the Court determines Ms. Tabish-Weaver failed to present sufficient evidence to survive summary judgment on her failure to accommodate claim, the Court need not address the definition of "disability" and the constitutional issue related thereto.

     For the reasons given above, **IT IS ORDERED:**

     1.   Defendant's Motion for Summary Judgment **(Ct. Rec. 12)** is

**GRANTED.**

      2.    **Judgment** is to be entered in Defendant's favor with prejudice.

      3.    This file shall be **CLOSED.**

      **IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order and distribute copies to counsel and the Human Rights Commission.

      **DATED** this __28th__ day of April 2008.


                    S/ Edward F. Shea
                    EDWARD F. SHEA
           UNITED STATES DISTRICT JUDGE

Q:\Civil\2007\0167.msj.wpd

ORDER ~ 10